ORIGINAL

FLORENCE T. NAKAKUNI          #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE             #3740
Chief, Criminal Division

CYNTHIA W. LIE
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    cynthia.lie@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 27 2015

at 2 o'clock and 59 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>CLARENCE MITSUYOSHI OKURA,<br><br>            Defendant. | CR. NO. 14-CR-01005 (JMS)<br><br>MEMORANDUM OF PLEA AGREEMENT<br><br>Date: March 27, 2015<br>Time: 2:15 p.m.<br>Judge: J. Michael Seabright |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and Defendant, CLARENCE MITSUYOSHI OKURA and his attorney, Michael J. Park, have agreed upon the following:

1.  Defendant acknowledges that he has been charged in the Indictment with violating Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud, violating Title 18, United States Code, Section 1343, Wire Fraud, and Title 18, United States Code, Section 1957, Engaging in a Monetary Transaction in Property Derived from a Specified Unlawful Activity.

The elements of Conspiracy to Commit Wire Fraud are as follows:

   a.  First, two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18 Chapter 63, as charged in the indictment,

   b.  Second, the Defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Wire Fraud are as follows:

   a.  First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

   b.  Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

   c.  Third, the defendant acted with the intent to

defraud; that is, the intent to deceive or cheat; and

    d.    Fourth, the defendant used, or caused to be used, the wires to carry out or attempt to carry out an essential part of the scheme.

<u>The elements of Engaging in a Monetary Transaction are as follows:</u>

    a.    First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

    b.    Second, the defendant knew the transaction involved criminally derived property, i.e. wire fraud;

    c.    Third, the property had a value greater than $10,000;

    d.    Fourth, the property was, in fact, derived from wire fraud; and

    e.    Fifth, the transaction occurred in the United States.

    2.    Defendant has read the charges against him contained in the Indictment, and these charges have been fully explained to him by his attorney.

    3.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count 1 of the Indictment charging him with Conspiracy to Commit Wire Fraud, Count 2 charging him with Wire Fraud, and Count 4 charging him with Engaging in Monetary Transaction, as soon as is practicable. The United States agrees that it will move for a dismissal of Count 3 (Wire Fraud) at the time of Defendant's sentencing.

a. Restitution: Defendant agrees to pay restitution to victims in the amount of $346,700.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this plea because he is in fact guilty of: Count 1, conspiracy to commit wire fraud, Count 2, wire fraud, and Count 4, engaging in a monetary transaction.

7. Defendant understands that the penalties for Count 1, the offense to which he is pleading guilty, include:

Counts 1 & 2

a. up to twenty years of imprisonment, a fine of up to $250,000, a term of supervised release of up to three years, and a special assessment of $100 on each count;

b. restitution pursuant to Title 18, United States Code, Section 3663(a)(3).

Count 4

        a.    up to ten years of imprisonment, a fine of up to $250,000, a term of supervised release of up to three years, and a special assessment of $100;

        b.    restitution pursuant to Title 18, United States Code, Section 3663(a)(3).

Defendant agrees to pay $300 to the District Court's Clerk's Office, to be credited to said special assessment, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

    8.    Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges and period of time described in the Indictment to which Defendant is pleading guilty:

        a.    Defendant resided in Hawaii.

        b.    The Defendant had a business account at Hawaii USA Federal Credit Union ("FCU") (account number ending in 164), in the name of GMM Consultants, LLC ("GMM"), a company established by Okura, for which he was listed as the only officer.

        c.    The Defendant also maintained personal joint bank accounts at Hawaii USA FCU in his name and the name of his wife

Yong Okura (accounts ending in 664 and 207).

        d.    From in or about October 2008 and continuing to September 2014, in Hawaii, and elsewhere, the Defendant and James A. Hawkins conspired to knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money from others, by means of materially false and fraudulent pretenses and representations, promises, and omissions as well as omissions of material facts, well knowing at the time that such pretenses, representations, promises and omissions would be and were false when made.

        e.    It was part of the scheme and artifice to defraud that the Defendant falsely told a number of investors that he was accepting investments for a real estate and community development project in the Kahuku area of Oahu's North Shore through Ko'olau Loa Partners, Inc. in a project called the Ko'olau Loa Project ("KLP"). In fact, and as he well knew, and failed to disclose, the Defendant did not use the money for the North Shore development project, and instead was accepting and using a material portion of the investor money to supplement his and co-conspirator James Hawkins' personal income and to pay personal expenses. When the Defendant communicated with investors about the status of their investments with him in the North Shore development project, the Defendant falsely represented that their investment was intact and failed to

disclose to the investors that he had already spent their investment money, mostly to supplement his and Hawkins' personal income and to pay personal expenses.

   f. The Defendant often referred prospective investors to this KLP information and description of the real estate project on an active website www.koolauloapartners.com, and the Defendant communicated with investors in person, by telephone and text messaging, and by email, using his email account okuraconsultant@gmail.com.

   g. Based on the foregoing false promises, representations, and omissions of material fact, the Defendant induced investors to provide an aggregate of over $200,000, but less than $400,000, which he used to supplement his and Hawkins income and to pay for the personal expenses of the Defendant or Hawkins.

Victim W.N.O. and K.J.O.

   h. In or about March of 2010, the Defendant falsely represented to W.N.O. and K.J.O. that their investment would be used for the Ko'olau Loa Project and failed to disclose to them that the Defendant would use a substantial portion of their investment to supplement the Defendant's personal income and to pay for his personal expenses.

   i. On or about March 19, 2010, the Defendant converted a $100,000 personal check from W.N.O. and K.J.O. into a

cashier's check which he subsequently deposited into the Defendant's business, GMM Consultants, LLC's account at Hawaii USA Federal Credit Union, account number ending in 164 ("GMM account").

### Victim J.M.H.

j.   On or about March 9, 2011, the Defendant did cause to be transmitted, in interstate commerce, by means of wire communications, an email from the Defendant to investor J.M.H. requesting additional investment money, in which the Defendant falsely represented that this investment was for KLP-related processing and transfer costs and in which the Defendant failed to disclose that he would use a substantial portion of this investment money to supplement the Defendant's personal income and to pay for the Defendant's personal expenses.

k.   On or about March 10, 2011, the Defendant deposited a $50,000 cashier's check from J.M.H. into the Defendant's GMM Account.

### Victim J.B.M.

l.   On or about August 11, 2009, the Defendant told investors J.B.M. that he was accepting investments into the KLP North Shore real estate project and accepted and deposited an investment check of $10,000 on August 11, 2009, a check of $35,000 on August 28, 2009, and a check of $5,000 on September 1, 2009 for the project (total $50,000), but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay personal expenses for the Defendant or Hawkins, a fact that he did not disclose to J.B.M.

### Victim P.E.D.

m. On or about August 5, 2009, the Defendant told P.E.D. that he was accepting investments into the KLP North Shore real estate project and accepted and deposited an investment check of $5,000 from P.E.D. for the project, but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay the Defendant's personal expenses, a fact that he did not disclose to P.E.D.

### Victim J.S.P.

n. On or about July 25, 2013, the Defendant told J.S.P. that he was accepting investments into the KLP real estate project and accepted and deposited an investment check of $10,000 from J.S.P. for the project that was moved from the North Shore to Wahiawa, but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay the Defendant's personal expenses, a fact that he did not disclose to J.S.P.

### Victim G.Y.

o. On or about June 27, 2011, the Defendant told investor G.Y. that he was accepting investments into the KLP North Shore real estate project and accepted and deposited an investment check of $60,000 from G.Y. for the project, but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay the Defendant's personal expenses, a fact that he did not disclose to G.Y.

### Victim P.H.K.

p.  On or about May 28, 2010, the Defendant told investor P.H.K. that he was accepting investments into the KLP North Shore real estate project and accepted and deposited an investment check of $26,000 from P.H.K. for the project, but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay the Defendant's personal expenses, a fact that he did not disclose to P.H.K.

### Victim P.S.

q.  On or about March 17, 2009, the Defendant told P.S. that he was accepting investments into the KLP North Shore real estate project and accepted and deposited an investment check of $50,000 from P.S. for the project, but the Defendant did not invest the money in the KLP project and instead used a substantial portion of the money to pay the Defendant's personal expenses, a fact that he did not disclose to P.S.  To date, the Defendant has paid back $29,300 to P.S.  Thus, Defendant still owes P.S. $20,700.

### Victim D.Y.

r.  On or about December 12, 2008, the Defendant brought in investor D.Y. to meet James A. Hawkins.  The Defendant had been telling D.Y. about the KLP North Shore real estate project and that the Defendant was accepting investments.  However, D.Y. wanted to meet Hawkins before he would invest in KLP.  At this December 12, 2008 meeting, the Defendant and Hawkins told investor D.Y. that they were accepting investments into the KLP North Shore real estate project and accepted an investment check of $25,000 from D.Y. for the project.  The Defendant represented to D.Y. that D.Y.'s

KLP investment money would be held in a financial account to show potential donors that the KLP project had investors. The Defendant and Hawkins knew that they would not keep D.Y.'s investment in a financial account to show potential donors but that a substantial portion of the investment money would be used to supplement personal income and to pay personal expenses of the Defendant or Hawkins.

9. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10. The parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a. The parties agree to and stipulate to the facts contained in Paragraph 8.

    b. The parties agree that the base offense level is 7, pursuant to USSG §2S1.1(a)(1) and §2B1.1.

    c. The parties agree, pursuant to USSG § 2B1.1(b)(1)(G) that the loss to be applied is $346,700.

    d. The parties agree that a 1 level enhancement for an 18 U.S.C. §1957 conviction applies, under U.S.S.G. §2S1.1.

    e. The United States agrees to recommend a 2 level

11

reduction in the applicable sentencing guideline offense, pursuant to U.S.S.G. 3E1.1(a), provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing.

   f. The government agrees to take the position that the Defendant was not an organizer, leader, manager, or supervisor under U.S.S.G. §3B1.1.

  11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may determine the facts relevant to sentencing with the aid of the presentence report.

  12. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties reserve the right to dispute any facts or Guidelines enhancements not stipulated to in this agreement.

  13. The Defendant is aware that he has the right to appeal his conviction and the sentence imposed. Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined, on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

   a. The Defendant also waives his right to challenge his conviction or sentence or the manner in which it was determined

in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b.   If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

    c.   The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

    14.   Defendant understands that the District Court will consider the provisions of the Sentencing Guidelines in imposing sentence. Defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any guideline or any portion thereof, notwithstanding any representations or predictions from any source.

    15.   Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an

13

opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

   16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

     a. If Defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury;

     b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be

instructed that Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt;

    c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of Defendant's guilt beyond a reasonable doubt;

    d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

    e.    At a trial, Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

17. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

18. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement

reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

19.  Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.  The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

20.  Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the

charge against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

DATED:  Honolulu, Hawaii, _____MAR 2 7 2015_____.

AGREED:

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

_____
LESLIE E. OSBORNE
Chief, Criminal Division

_____
CLARENCE MITSUYOSHI OKURA
Defendant

_____
CYNTHIA W. LIE
Assistant U.S. Attorney

_____
MICHAEL A. PARK
Attorney for Defendant